FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 1 3 2024

Kevin P. Weimer, Clerk
By: Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| THE EXTRADITION OF ) | 1:24-MJ-61 |
| ) | |
| GHEORGHE DUMITRU ) | |
| ) | |
| ) | |

COMPLAINT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, depose and say under penalty of perjury, on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to the United Mexican States ("Mexico").

2. There is an extradition treaty in force between the United States and Mexico: Extradition Treaty Between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, *as amended by* the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998) (collectively referenced hereafter as the "Treaty").

3. Pursuant to the Treaty, the Government of Mexico has submitted a formal request through diplomatic channels for the extradition of GHEORGHE DUMITRU ("DUMITRU").

4. According to the information provided by the Government of Mexico, DUMITRU has been charged with two offenses: (1) criminal association in violation of Article 164, in relation to Article 13, section III of the Mexican Criminal Code, and (2) unduly withdrawing proceeds from credit institutions in violation of Article 113 Bis of the Law of Credit Institutions.

5.      These offenses were committed in Mexico. On June 2, 2021, a District Court Judge of the Federal Justice Center in Reclusorio Sur, Mexico City, Mexico issued a warrant for DUMITRU's arrest.

6.      The extradition request presents the following facts as the basis for the arrest warrant and extradition request:

   a.      On March 16, 2017, representatives of the bank, BBVA Bancomer ("BBVA"), received reports of insufficient cash in multiple BBVA ATMs located in Mexico City and Cancun.

   b.      Based on their investigation, Mexican authorities determined that these March 15 and 16, 2017, withdrawals were part of a coordinated bank skimming operation (the "BBVA operation") perpetrated by a criminal organization identified as "Banda de la Riveria Maya" (the "criminal organization"), which had been operating since, at least, 2016, to illegally obtain cash from ATMs that belonged to banking institutions.

   c.      Based on the statements of multiple confidential witnesses and information provided by BBVA, Mexican authorities uncovered the criminal organization's operational structure and established a timeline for the BBVA operation on March 15 and 16, 2017.

   *The Criminal Organization*

   d.      The criminal organization specialized in illegal ATM skimming operations and maintained a complex and well-organized structure to achieve these goals. The criminal organization was led by two men, Florian Tudor ("Tudor") and Cosmin Adrian Nicolae ("Nicolae"), who planned, organized, directed, and supervised the criminal operations. The remaining members were divided into two categories, "technicians" and "card operators."

e.  The technicians were tasked with creating a virus designed to breach BBVA's firewalls to allow withdrawals from ATMs in which credit card skimming devices, or "skimmers," had been placed. The criminal organization then used a front company to place the ATMs (the "compromised ATMs") in locations around Mexico. Once the compromised ATMs were placed, card operators were tasked with withdrawing money to empty compromised ATMs using cloned bank cards.

f.  A security guard working for Tudor reported that prior to the BBVA operation, she observed large amounts of money and a number of blank white bank cards in Tudor's home and in cars belong to his children. She subsequently learned from another employee that the bank cards were used to illegally withdraw money from ATMs. The security guard also observed the technicians opening and performing work on ATMs and writing in security logs that they were going to repair ATMs and skimmers.

*Timeline of the BBVA operation*

g.  On February 27, March 5, and March 7, 2017, Nicolae tested the cloned bank cards at compromised ATMs. During this test run, Nicolae used bank cards with the Bank Identification Number ("BIN") associated with Banco do Brasil.

h.  On March 15, 2017, Tudor held a party as his house in Cancun, Quintana Roo, at which he announced the commencement of the BBVA operation. During the BBVA operation, Tudor remained at his home, where he coordinated operations.

i.  Between March 15 and 16, 2017, card operators used cloned bank cards to empty the compromised ATMs of cash. Based on BBVA's internal investigation, it identified a total of 5,175 irregular cash withdrawals at 477 ATMs in Mexico City, Cancun, and Merida between March 15 and 16, 2017, which amounted to a total loss of 70,376,300 Mexican Pesos (then worth

3

approximately $3,659,568). BBVA traced the irregular withdrawals to twelve cards that had a BIN associated with Banco do Brasil, which matched the BIN for cards Nicolae had previously used to test the compromised machines.

j. During the operation, technicians were located at a private residence, where they remotely reviewed data, manipulated transfers, and authorized transactions from the compromised ATMs to allow the card operators withdraw the money.

k. Employees working at Tudor's home during the operation described unusual activity at the home during the BBVA operation. A security guard explained that she was denied entry to the interior of Tudor's home on March 16, 2017. Despite being barred from entering the home, the security guard, from her post at the home's guard house, observed an unusually large number of individuals arriving to the home throughout the day. The individuals were carrying black suitcases or bags, which they left at Tudor's home. Additionally, the security guard witnessed one of Tudor's employees carrying an unzipped purse, which contained wads of cash.

*Identification of DUMITRU as an alleged card operator*

l. Employees working at Tudor's home identified DUMITRU as a member of the criminal organization and participant in the BBVA operation. According to one employee with knowledge of the BBVA operation, DUMITRU arrived in the area with his family in 2016. Tudor considered DUMITRU a "special guest" and supplied him with a home at which to stay with his family. The employee identified DUMITRU as a member of the criminal organization and explained that DUMITRU worked as a card operator during the operation.

m. CCTV footage from a BBVA branch in Cancun, Quintana Roo, shows an individual fitting DUMITRU's description making 285 withdrawals from a compromised ATM using one of the cloned Banco do Brasil cards, ultimately withdrawing 3,533,000 Mexican Pesos

(then worth approximately $187,832). A physiognomic identification expert subsequently compared the CCTV footage to a photograph of DUMITRU provided to Mexican authorities by the U.S. Federal Bureau of Investigation ("FBI photograph") and determined that DUMITRU is the individual seen in the CCTV footage. Mexican authorities presented the same FBI photograph as part of a photo array to the security guard who had worked at Tudor's home at the time of the BBVA operation. The security guard similarly identified the photograph as DUMITRU, who she said went by the alias "Romeo."

7.  DUMITRU may be found within the jurisdiction of this Court at United States Penitentiary Atlanta, 601 McDonough Blvd SE, Atlanta, GA 30315.

8.  Tom Heinemann, an Attorney Adviser in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and providing a copy of the Treaty between the United States and Mexico. The declaration states that the offense for which extradition is demanded is provided for by the Treaty. The declaration confirms that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Mexico, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

9.  The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Mexico, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as "Government's Exhibit #1") are filed with this complaint and incorporated by reference herein.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Mexico, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered.

*Lauren T. Macon*
Lauren T. Macon
*Assistant United States Attorney*

Sworn to before me, and subscribed in my presence, this 13th day of February at 2024.

Justin S. Anand
United States Magistrate Judge